# NOVEMBER 1, 1933

SOLLIE BAKER V. THE STATE.

No. 16067.   Delivered November 1, 1933.
Reported in 64 S. W. (2d) 793.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for forgery, punishment assessed being two years in the penitentiary.

The alleged forgery relied upon by the state was the indorsement of the name "L. F. Greer" upon the back of a check which had been given to said Greer on September 27, 1932, by one Lockridge.

The evidence shows that Baker (appellant) was with Greer at the time said check was received in payment for two head of cattle which Greer had sold Lockridge. It is appellant's contention that the testimony of Etheridge, an admitted accomplice, is not sufficiently corroborated to meet the requirements of article 718, C. C. P., which reads: "A conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

Our state's attorney agrees that appellant's contention must be sustained.

The evidence is undisputed that on the next day after Greer got the check Baker, Etheridge, Timmons and Jenkins were in an automobile on a public road going after some whisky. They met up with Greer. Etheridge testified that when Greer was

seen coming towards them and before he got to the car Baker (appellant) said, "there was a guy who had some money and we should get him to come with us." The car belonged to Baker. Upon solicitation Greer got in the car with the parties named. They drove for some distance when Baker, Etheridge and Greer got out of the car, leaving Timmons and Jenkins to go after the whisky. In a short time Timmons returned with the car and Jenkins came a little while afterward with a gallon of whisky. This seemed to be at a point near a tank. Etheridge testified that up to this time nothing had been said about getting Greer drunk, but that he and Baker engaged in a conversation at the tank and entered into an agreement to get the check away from Greer, the exact words being, according to Etheridge, "Sollie (appellant) said he (Greer) had a check and that if we could get him drunk we might get him to go to town and get it cashed and get some money out of it. I was willing to try it and James Timmons complied or agreed with that." Etheridge testified that he and Baker told Jenkins what they had agreed to do. By this time all parties seemed to be somewhat under the influence of whisky. Jenkins separated from the others named and, even according to Etheridge, had nothing further to do with the enterprise. Etheridge further testified that after Jenkins had gone the four remaining parties started towards Brownwood, but stopped again and tried to get Greer to indorse the check; that he (Etheridge) and Timmons, got out of the car leaving Baker in the car with Greer; that after staying in the car for a time Baker got out and reported that he had been unsuccessful in getting Greer to indorse the check; that Timmons then got in the car with Greer and after having been in the car some fifteen minutes Timmons reported that he (Timmons) had "signed" the check himself. According to the testimony of Etheridge, he and Baker were at this time back of the car. All four of the parties then proceeded to Brownwood. When they arrived there Greer was very drunk. Etheridge went into the bank and cashed the check, claiming that he left all three of the other parties in the car and that when he returned to the automobile they drove out on a road some distance, took Greer out of the car and left him by the side of the road in some weeds. Etheridge claimed that at this point the twenty-four dollars obtained on the check was divided; that he got five dollars and fifty cents, Timmons got five dollars and fifty cents, and Baker got ten dollars, and the three remaining dollars were put in Greer's pocket. Greer testified that after he got in the car with the parties mentioned Baker asked him if he had ever

cashed his check. He told him that he had not, and that Baker asked if he wanted to go to town with him after a while to cash the check; that this question was asked more than once by appellant. He further testified that while they were at the tank he saw Baker and Etheridge engaged in a private conversation but did not know what they were saying. Greer does not claim to know anything about losing the check or having the check taken from him, or about anyone attempting to get him to indorse the check, and did not know how he got in the weeds by the side of the road. He denied having indorsed the check.

T. F. Greer, the father of the injured party, testified that after the parties were indicted he had a conversation with Baker in which Baker asked if they had not always been good friends, to which the witness answered they had up until now. Baker asked him, "All you care is just your money back, isn't it?" and that witness said, "That is the least part of it." The banker who cashed the check testified that a party came into the bank and presented the check in question and that the indorsement of the name "L. F. Greer" was not written in his presence, that it was on the check at the time it was presented; that he asked the party if that was his name, and that the party answered "Yes," that he paid the check then thinking he was paying it to Greer, but he knew now the party to whom he paid the money was Etheridge.

The foregoing is the state's case. We have been unable to discover therein any testimony which meets the requirements of the law sufficiently corroborating the testimony of Etheridge. He had been tried the day before appellant's case was called, had plead guilty and received a suspended sentence. The evidence shows that Greer's family and appellant had always been friendly and we can not attach to Mr. T. F. Greer's testimony anything of a criminative character so far as appellant's connection with the case is concerned. While Etheridge testified that Timmons said he had signed (that is, indorsed) the check at the time he Timmons got out of the car, he nowhere explains how he (Etheridge) came into possession of it. It may be noted that no effort appears to have been made by the state to show by proof of handwriting or otherwise who in fact had indorsed Greer's name on the check. So far as the record is concerned, outside of the testimony of Etheridge, it might have been written by him. The guilt of appellant appears to depend upon a conspiracy to secure and appropriate Greer's check which contemplated the forgery of Greer's indorsement thereon. We fail to find any testimony corroborating the accomplice witness in

his claim that Timmons indorsed the check, or that Baker had any knowledge thereof or was a party thereto. Thus far we have considered the state's evidence only.

When we turn to the testimony offered by appellant we find that Jenkins, whom Etheridge says was told of the plan to secure the check from Greer, testified that he heard nothing of any such plan, and heard no one say anything about getting Greer drunk and getting the check away from him. He said Greer was the first man he heard mention the matter of the check; that after Greer got into the car he asked appellant Baker if he was going to town, and upon being told that he was Greer, said he wanted to go with him and get his check cashed. He further denied that Baker or anyone else in the car said anything about the check as Greer was approaching at the time they first met him. Timmons had been tried and acquitted. He testified that the first he heard of the check was that after Greer got in the car he asked if Baker was going to town, saying he would like to go with him and get a check cashed; that he (Timmons) knew nothing about any check at the time and did not know what they meant; that after that conversation nothing was said about the check one way or the other. He further testified that after they got to Brownwood he and Baker got out of the car and went to look after some business, leaving Etheridge and Greer in the car; that when they came back to the car Greer had gotten sick and had vomited over the car; that they were afraid he would be arrested and drove out of town some two or three miles and left Greer in the weeds; that when they left town they went by to pick him up, but he had already gone; that he knew nothing about Etheridge having cashed any check, got no part of the money, was not a party to any plan to secure the check from Greer; had not attempted to do so himself and denied having indorsed Greer's name on the check. The testimony of Baker was practically to the same effect as that of Timmons.

Believing the state has failed to meet the measure of the law in attempting to corroborate its accomplice witness, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*